IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

```
JOHN K. JENKINS,              )
                              )
          Plaintiff,          )        8:11CV266
                              )
     v.                       )
                              )
MICHAEL J. ASTRUE,            )        MEMORANDUM OPINION
Commissioner of the Social    )
Security Administration,      )
                              )
          Defendant.          )
_____)
```

This matter is before the Court on a request for review of the decision of defendant Commissioner of the Social Security Administration ("SSA") denying Social Security Disability Insurance ("SSD") benefits to plaintiff John K. Jenkins ("Mr. Jenkins"), filed pursuant to 42 U.S.C. § 405(g).  Upon review, the Court finds the SSA's decision is not supported by substantial evidence and should be reversed and the matter remanded for award of Mr. Jenkins' SSD benefits.

**I.   Factual and Procedural History.**

Mr. Jenkins was born on November 12, 1957.  He graduated from high school and attended college for a year and a half, where he studied radiation technology.  Mr. Jenkins was in the military from 1976 to 1980, and he receives his medical care from the Veterans Administration ("VA").  His most recent jobs were working as a custom plastic fabricator and as a movie

projectionist; he testified that he held down both jobs at one time.  Mr. Jenkins was laid off from both jobs in 2007.

Mr. Jenkins applied for SSD benefits on July 15, 2008. Mr. Jenkins alleges two major impairments:  malignant neoplasm of the large intestine and hepatitis[1] (Tr. 89).  Mr. Jenkins alleges he has been disabled since April 29, 2008, when he had colon resection surgery to treat his colon cancer.  After the surgery, he received a course of chemotherapy, which was completed on November 26, 2008.  His medical records do not indicate any recurrence or metastasis of the cancer.  However, despite successful treatment of his colon cancer, Mr. Jenkins claims that he suffers from rectal incontinence that does not allow him to work.

On August 27, 2008, Glen Knosp, M.D., a state agency reviewing physician, completed a Physical RFC Assessment of Mr. Jenkins for his initial disability application (Tr. 483-91).  Dr. Knosp listed Mr. Jenkins' diagnoses as colon cancer with ongoing chemotherapy and hepatitis C (Tr. 483).  Dr. Knosp stated that Mr. Jenkins' diagnoses limit him to lifting no more than fifty pounds occasionally and twenty-five pounds frequently, standing or walking about six hours in an eight-hour workday, and sitting

---

[1] Mr. Jenkins has not alleged that the hepatitis limits him in any way.

about six hours in an eight-hour workday (Tr. 484).  On August 27, 2008, the SSA denied Mr. Jenkins' initial SSD benefits claim.

On January 9, 2009, Arthur Weaver, D.O., also a state agency reviewing physician, completed a second Physical RFC Assessment of Mr. Jenkins for the reconsideration of his disability application (Tr. 628-29).  Dr. Weaver noted that there were no new allegations since the last determination and that "the RFC of 8/27/08 is affirmed as written with durational time correction"[2] (Tr. 628).  Dr. Weaver stated that "there was no significant evidence of functional limitation prior to 4/29/08" and that "chemotherapy side effects would be expected to largely abate and [Mr. Jenkins] would be projected to 4/29/09," meaning, presumably, that Mr. Jenkins would not be functionally limited for more than a year after his date of onset of April 29, 2008 (Tr. 629).  On January 12, 2009, Mr. Jenkins' claim was again denied.  He then requested a hearing by an Administrative Law Judge ("ALJ").

On June 30, 2009, Judith Vogelsang, D.O, a state agency reviewing physician, completed a third Physical RFC Assessment of Mr. Jenkins (Tr. 775-80).  Dr. Vogelsang listed Mr. Jenkins' diagnoses as follows:  adenocarcinoma of colon status post low

---

[2] Mr. Jenkins originally claimed a date of onset of December 25, 2007, and then changed the date to February 13, 2008, but later acquiesced to Dr. Weaver's opinion that there was no disability prior to the cancer surgery on April 29, 2008.

anterior resection, and chemotherapy; osteochondroma right knee; hepatitis C; BPH (Tr. 775).  Dr. Vogelsang stated that Mr. Jenkins' diagnoses limited him to lifting no more than twenty pounds occasionally and ten pounds frequently, standing or walking about six hours in an eight-hour workday, and sitting about six hours in an eight-hour workday (Tr. 776).  Dr. Vogelsang wrote that Mr. Jenkins should be limited to only occasional climbing, kneeling, crouching, and crawling (Tr. 777).  In her case analysis, Dr. Vogelsang wrote that as of May 2008, according to a two-week follow-up surgery note, Mr. Jenkins has "been moving his bowels fairly normally without difficulty" (Tr. 781).  Dr. Vogelsang concluded, "Projected RFC for the period of 4/29/2008-4/2009 and current would be as indicated on the RFC form dated 6/30/2009.  This RFC could decline in the future with his past history" (Tr. 783).

On September 15, 2009, Mr. Jenkins answered interrogatories posed by the SSA.  The SSA asked, "What is it about your mental or physical problems that prevents you from working?" (Tr. 208).  Mr. Jenkins replied, "I have no control over my bowel movements.  The doctors cut out a lot of the muscle around my colon and I have at least one accident a day.  I need to change my clothes and take a shower after I have an accident." *Id*.  The SSA also asked, "Do you ever go shopping, if so, where and for what?" (Tr. 211).  Mr. Jenkins replied, "I will go

grocery shopping for necessities, but I have had four or five accidents at the store in the last six months." *Id*. The SSA asked, "Do you attend religious or family events?" *Id*. Mr. Jenkins replied, "No, I am afraid I will have a bowel accident." *Id*.

On October 20, 2009, Mr. Jenkins' primary care physician, Steven Gonzalez, M.D., wrote a letter to Mr. Jenkins' attorney regarding Mr. Jenkins' rectal incontinence. Dr. Gonzalez described Mr. Jenkins' cancer surgery and chemotherapy. Dr. Gonzalez then wrote, "[Mr. Jenkins'] only symptom at the present time is rectal incontinence and rectal irritation" (Tr. 804). Dr. Gonzalez continued,

> Mr. Jenkins relates that he will have 6-8 bowel movements every night characterized by small and formed stool; however, he will have loose stool which causes rectal incontinence as he has no control whatsoever when his stools are loose. He is unable to work as he will have intermittent soiling with rectal discharge with little warning.
>
> He cannot afford diapers and is thus soiling his underwear. He relates that he can go one or two days without fecal incontinence but that it can occur unpredictably about once every three days. As such, he is unable to work as a plastic fabricator.

(Tr. 805). Dr. Gonzalez's assessment was as follows: "Stage IIa adenocarcinoma of the colon, status post complete resection,

-5-

doing well clinically without evidence of recurrence. The treatment has been complicated by rectal tenesmus, urgency, and incontinence which render it difficult for Mr. Jenkins to continue full and gainful employment." *Id*. Dr. Gonzalez stated, "It is my expectation that such rectal incontinence will persist for at least another 12 months and perhaps life-long." *Id*.

A hearing before the ALJ took place on October 29, 2009, to review Mr. Jenkins' SSD benefits claim. At the hearing, Mr. Jenkins testified, "I have no warning when I have a bowel movement and I don't know until it just starts coming out and then I can't push out what's in there and I can't stop from what's coming out . . ." (Tr. 67). Mr. Jenkins testified that he had complained of this issue to his doctors after his surgery, who had told him that his bowel problem was "normal" and that "it could take up to a year to start getting your control again. So I never brought it up too much until he left and I got a new doctor and she told me the same thing." *Id*. Mr. Jenkins testified that he only sees Dr. Gonzalez once a year, which is why Mr. Jenkins had mentioned the rectal incontinence to Dr. Gonzalez only recently, a month before the hearing.

Mr. Jenkins testified that he changes his adult diapers 4-5 times a day or during the night. After a bowel movement at work, he would have to go to the bathroom to clean up, which would not be possible when running nine movies at a time. In

addition, after taking 5-10 minutes off work to get cleaned up, he might have another bowel movement just minutes later "because all of my feces doesn't come out all at once" (Tr. 70). Although the adult diaper contains the feces, Mr. Jenkins testified, "If it's a loose stool, it's definitely shower time" (Tr. 71-72). Mr. Jenkins candidly testified that other than the bowel problem, there is no other medical problem that would prevent him from working.

The ALJ posed the following hypothetical to the vocational expert at the hearing:

> Alright, the first hypothetical is – no mental is alleged, but from a physical standpoint, he's capable of medium exertional work, could occasionally lift or carry 50 pounds, frequently lift or carry 25 pounds, no restriction in stand, sit or walk. He could frequently do all postural, except for crawling, which should be only occasional and should avoid, I'm going to say, I don't really see a basis to say avoid hazards. DDS had down avoid hazards. I'm not sure what that would be based on. But let's just say avoid ladders, ropes, scaffolds. With that functional capacity, could he return to his past work?

(Tr. 76). Based on the hypothetical, the vocational expert stated, "[He] would be able to return to his work as the fixture fabricator as the DOT describes it, at the medium level, and also return to the motion picture projectionist, as well." *Id*. The

-7-

vocational expert also testified that the hypothetical worker could perform a "very wide range . . . . nearly a full range of medium" as well as light work, "certainly the unskilled" (Tr. 76-77).

The ALJ then added that the hypothetical worker needed "an unscheduled bathroom break" (Tr. 78). The vocational expert testified that this addition would rule out work as a fabricator and a movie projectionist (Tr. 78). However, other possibilities would not be ruled out, including medium level jobs such as "industrial janitor," "warehouse worker," and "material handler," among others, as well as many light level jobs (Tr. 78-79). With the addition to the hypothetical of the need to wear a diaper, the vocational expert testified that "I have had some experience with that. And it varies with the degree of severity of the problem. . . . If they weren't able to manage [the incontinence], we just weren't able to help them find work" (Tr. 81).

Finally, the ALJ asked, "Now, lastly, based on the testimony that you've heard today from Mr. Jenkins, do you think he could do the type of jobs that you have identified?" *Id*. The vocational expert replied, "Based on his testimony, I would say no and that's because of the frequency of the incontinence and the requirement that he indicated at least half of those times he would have to shower to clean up." *Id*.

On March 16, 2010, the ALJ issued an opinion upholding the denial of Mr. Jenkins' SSD benefits claim. Due to a "central print error," the notice of unfavorable opinion was sent to Mr. Jenkins on May 7, 2010 (Tr. 17). The ALJ evaluated Mr. Jenkins' claim under the mandated five-step sequential process. *See* 20 C.F.R. § 404.1520(a). At step one, the ALJ found that Mr. Jenkins had not engaged in substantial gainful activity since April 29, 2008, the alleged onset date of his disability. At step two, the ALJ found that Mr. Jenkins' impairments, Stage IIA adenocarcinoma of the colon, in remission, and hepatitis C, were severe. At step three, the ALJ found that Mr. Jenkins' impairments did not meet one of the listed impairments found in 20 C.F.R. pt. 404, subpt. P, app. 1.

Next, the ALJ determined that Mr. Jenkins had an RFC

> to perform medium work, defined in 20 CFR 404.1567(c), with the ability to lift and carry 20 pounds occasionally and 10 pounds frequently. He has no restrictions in the ability to stand, sit or walk. The claimant can frequently perform all postural activities but can only occasionally crawl and should avoid ladders, ropes and scaffolds. In addition to normal breaks, he could occasionally need a bathroom break unscheduled for 5-10 minutes; he wears adult diapers.

(Tr. 23).

In making this determination, the ALJ found Mr. Jenkins' "medically determinable impairments could reasonably be

expected to cause the alleged symptoms; however, [Mr. Jenkins'] statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" (Tr. 25).  The ALJ stated, "At hearing, for the first time, claimant raised a new problem:  loss of control over his bowel movements" (Tr. 24).

The ALJ found that Dr. Gonzalez's opinion that Mr. Jenkins cannot work "was provided by patient report only and is not given great weight because it is inconsistent with the record as a whole including VA treatment notes and [Mr. Jenkins'] own statements" (Tr. 25).  The ALJ noted, "There has been no effort to treat the symptom with medication or diet. . . . The doctor did not comment on the ability to control the symptom with adult diapers or any conservative measures."  *Id*.  "The medical evidence . . . fails to support the alleged severity of [Mr. Jenkins'] impairments.  The undersigned notes there is no mention of loose stool complaints or problems of incontinence in his VA records" (Tr. 26).  In addition, "Based on his reported daily activities, [Mr. Jenkins'] impairments do not appear as limiting as he has alleged."  *Id*.

At step four, the ALJ found that Mr. Jenkins was able to perform his past relevant work as a movie projectionist.  At step five, the ALJ found, "Based on the testimony of the

vocational expert, . . . considering [Mr. Jenkins'] age, education, work experience, and residual functional capacity, [Mr. Jenkins] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" (Tr. 28). Therefore, the ALJ determined that Mr. Jenkins was not disabled and did not qualify for SSD benefits.

On June 22, 2011, the Appeals Council declined Mr. Jenkins' request for review, so the ALJ's decision is now the final decision of the SSA. Mr. Jenkins timely filed a complaint with the United States District Court for the District of Nebraska on August 3, 2011.

## II.  Discussion.

**A.  Standard of Review.**

When reviewing an ALJ's decision, the Court "must determine 'whether the ALJ's decision complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Martise v. Astrue*, 641 F.3d 909, 920 (8th Cir. 2011) (quoting *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Substantial evidence" is

> relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Substantial evidence on the record as a whole, however, requires a more scrutinizing analysis. In the review of an administrative decision, the substantiality of evidence must take into account whatever in the record fairly

> detracts from its weight. Thus, the court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory.

*Id.* at 920-21 (quoting *Halverson*, 600 F.3d at 929). "'If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)). The Court may not reverse the ALJ's decision "merely because [the Court] would have come to a different conclusion. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011) (citing *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir.2008)). The claimant "bears the burden of proving disability." *Id.* at 615.

**B. The ALJ's Decision.**

    **1. Credibility of Mr. Jenkins.**

An ALJ's credibility findings must be supported by substantial evidence. *Robinson v. Sullivan*, 956 F.2d 836, 839 (8th Cir. 1992). For example, "In analyzing a claimant's subjective complaints of pain, an ALJ must examine: '(1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; [and] (5) functional restrictions.'" *Dunahoo v. Apfel*, 241 F.3d 1033,

1038 (8th Cir. 2001) (quoting *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). If the ALJ gives "good reasons" for not crediting the claimant that is supported by the record, the Court will defer to the ALJ's judgment. *Robinson*, 956 F.2d at 841.

    Here, the ALJ found that Mr. Jenkins' testimony was not believable, in part because the ALJ stated that Mr. Jenkins was complaining of incontinence for the first time at the hearing. But Mr. Jenkins had described his bowel problems earlier, as noted above, when he answered the SSA's interrogatories. The ALJ also noted that Mr. Jenkins was not substantially impaired in his activities of daily living because Mr. Jenkins could go grocery shopping; the ALJ did not note that Mr. Jenkins stated that he has had four or five accidents while shopping. The ALJ stated that Mr. Jenkins enjoys television and fishing; the ALJ did not mention that Mr. Jenkins avoids church and social activities because of the fear of a bowel accident. The ALJ found Mr. Jenkins not credible because on one occasion Mr. Jenkins said he wears diapers, while on another occasion, Mr. Jenkins said he cannot afford diapers. Both of these statements could have been true at the time Mr. Jenkins made them; the more important issue is Mr. Jenkins' need to purchase diapers at all.

    As quoted above, Mr. Jenkins described his bowel problems in his answers to the SSA's interrogatories and at the ALJ hearing with specificity. In addition, he explained why he

did not mention the problem to his medical providers until recently. Mr. Jenkins forthrightly stated that the rectal incontinence is the only medical problem that keeps him from working. The SSA states in its brief that Mr. Jenkins' "alleged limitations would be disabling if true" (Filing No. 21, at 11). The Court finds that the evidence supports Mr. Jenkins' allegations of his limitations. The Court finds Mr. Jenkins to be a credible witness to his own bowel function.

### 2. Opinion of Dr. Gonzalez, Treating Physician.

Mr. Jenkins alleges that the ALJ erred in impermissibly discounting the opinion testimony of Dr. Gonzalez, his primary physician. Generally, "'a treating physician's opinion is entitled to substantial weight.'" *Martise*, 641 F.3d at 925 (quoting *Brown v. Atrue*, 611 F.3d 941, 951-52 (8th Cir. 2010)). However, an ALJ "may justifiably discount a treating physician's opinion when that opinion 'is inconsistent with the physician's clinical treatment notes.'" *Id.* (quoting *Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009)).

Here, the ALJ concluded, "Dr. Gonzalez's opinion that the claimant cannot work was provided by patient report only and is not given great weight because it is inconsistent with the record as a whole including VA treatment notes and [Mr. Jenkins'] own statements" (Tr. 25). But it is unclear how Mr. Jenkins would otherwise show Dr. Gonzalez what the problem is other than

to report it.  In addition, while Mr. Jenkins did deny bowel problems during some of his VA medical visits, Mr. Jenkins explained in his testimony as to why he did not frequently mention his bowel problems during the course of his cancer treatments.[3]

The ALJ suggested medical treatment for Mr. Jenkins when she wrote, "There had been no effort to treat the symptoms with medication or diet."  In so doing, the ALJ ignored Dr. Gonzalez's medical opinion, namely, "It is my expectation that such rectal incontinence will persist for at least another 12 months and perhaps life-long."  The ALJ also suggested that "conservative measures" might aid Mr. Jenkins, but the ALJ did not indicate what those measures are or why Dr. Gonzalez should have suggested them.  Finally, the ALJ implied that a normal rectal examination is inconsistent with rectal incontinence, but did not cite any medical authority to substantiate her medical conclusion.

The Court finds no reason to doubt Dr. Gonzalez's medical opinion regarding the persistence of Mr. Jenkins' rectal incontinence.  The Court finds that the ALJ did not have substantial evidence that would support discounting Dr.

---

[3] The ALJ noted that Mr. Jenkins testified that he is missing a thumb and three fingers on his left hand, and that he has little use of it.  The Court found little complaint by Mr. Jenkins of this deficit to his medical doctors.

Gonzalez's opinion, considering that Dr. Gonzalez is Mr. Jenkins' treating physician.

### 3. Opinion Testimony of the Vocational Expert.

At step four, the ALJ found that Mr. Jenkins was able to perform his past relevant work as a movie projectionist. But the ALJ ignored the fact that when she added the restriction that the hypothetical worker needed "an unscheduled bathroom break," the vocational expert testified that this addition would rule out work as a movie projectionist (Tr. 78).

At step five, the ALJ stated that "Mr. Jenkins is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" (Tr. 28). The ALJ herself stated as part of Mr. Jenkins' RFC, "he wears adult diapers." Yet the ALJ ignored the fact that with the addition of a the need to wear a diaper, the vocational expert testified that "it varies with the degree of severity of the problem. . . . If they weren't able to manage [the incontinence], we just weren't able to help them find work" (Tr. 81).

Finally, the ALJ discounted the answer to her question, "Now, lastly, based on the testimony that you've heard today from Mr. Jenkins, do you think he could do the type of jobs that you have identified?" (Tr. 81). The vocational expert replied, "Based on his testimony, I would say no and that's because of the frequency of the incontinence and the requirement that he

indicated at least half of those times he would have to shower to clean up" (Tr. 81).  Based on the foregoing, this Court finds that Mr. Jenkins' need for frequent bathroom breaks to clean up and his need to wear a diaper do not allow for a job in the national economy.

### III. Conclusion.

The Commissioner's decision will be vacated, and this matter remanded for the award of SSD benefits to Mr. Jenkins.  A separate order will be entered in accordance with this memorandum opinion.

DATED this 24th day of February, 2012.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court